**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

TALENTSCALE, INC.,

Plaintiff/Judgment Creditor,

v. Case No. 5:25-mc-1-TKW/MJF

AERY AVIATION, LLC,

Defendant/Judgment Debtor.
___________________________________/

# ORDER

In 2024, Talentscale obtained a federal judgment against Aery Aviation, LLC in the amount of $1,142,467.20. Aery has yet to satisfy the judgment. In an effort to find Aery's assets, Talentscale served a subpoena duces tecum on a non-party. Aery moves for a protective order to preclude this line of inquiry. Because Talentscale's inquiries are permissible under Rule 69(a)(2), and in any event, Aery lacks standing to raise the interests of the non-party on which Talentscale served the subpoena, Aery's motion must be denied.

## BACKGROUND

Talentscale is a Nevada staffing company that provided "staffing services" to Aery beginning in January 2021. Aery is a Virginia-based

aircraft procurement company. Aery breached its contract with Talentscale by failing to pay for the services Talentscale rendered. An arbitrator subsequently determined that Aery owed Talentscale $1,142,467.20 for this breach of the contract. In 2024, Talentscale entered the judgment in the United States District Court for the Eastern District of Virginia. In January 2025, Talentscale registered the judgment in the United States District Court for the Northern District of Florida pursuant to 28 U.S.C. § 1963.

Aery is a Virginia limited liability company composed of four members. Scott Beale is one of the members. Indeed, Talentscale contends that Beale is the "majority interest holder" in Aery, and a well-compensated one at that. According to Talentscale, between 2021 and 2024, Aery distributed over $10.4 million to Beale.

Beale owns two homes in Florida. Specifically, during the period that Aery claimed it was impecunious and unable to pay Talentscale, Beale purchased a home in Marco Island, Florida for $1.25 million and a second home—less than 15 miles away—in Naples, Florida for $550,000. Beale purportedly also spent $942,769 to renovate the Marco Island

home, all while Aery claimed it was impoverished and unable to pay its obligations to Talentscale.

Aery has yet to satisfy the judgment Talentscale obtained. Pursuant to Rule 69(a)(2) of the Federal Rules of Civil Procedure, Talentscale is seeking information regarding assets that it might acquire in an effort to satisfy the judgment.

In an effort to trace Aery's assets, Talentscale issued a subpoena duces tecum to Nova Homes of South Florida, which identifies itself as "Southwest Florida's premier custom home builder." Apparently, Scott Beale contracted with Nova Homes to build or renovate Beale's Marco Island home, although the parties do not specifically say this. Talentscale seeks from Nova Homes a long list of documents, including contracts, proposals, estimates, work orders, invoices, records of payments, and any communications with Beale.

Aery argues that Talentscale lacks any authority to seek information about Beale, Talentscale served the subpoena on Nova Homes to harass Beale, and the subpoena seeks irrelevant information. Aery, therefore, seeks a protective order that protects Nova Homes from

having to disclose the documents and information requested by Talentscale.

## DISCUSSION

### A. Rule 69(a)(2) Affords Judgment Creditors Broad Discovery

Rule 69(a)(2) of the Federal Rules of Civil Procedure permits broad discovery. *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 138 (2014); *F.D.I.C. v. LeGrand*, 43 F.3d 163, 172 (5th Cir. 1995). It does so because the satisfaction of judgments is important to the American legal system.

Federal litigation often is expensive. *San Antonio v. Hotels.com*, *LP*, 593 U.S. 330, 332 (2021). Judgment creditors often invest substantial quantities of time, effort, and capital into securing and enforcing judgments. If these investments consistently yielded only meaningless judgments that never resulted in monetary recovery, parties would no longer seek justice in the courts, and instead would resort to "self help" remedies outside the confines of the law. "Nothing so quickly undermines society as a failure to enforce its laws." Charles Evans Hughes, quoted in ADDRESSES OF CHARLES EVANS HUGHES, 1906–1916 247 (2d ed. 1916).

It is also true that the "dignity of a court derives from the respect accorded its judgments." *Degen v. United States*, 517 U.S. 820, 828 (1996). A widespread inability to enforce money judgments would result in disrespect for the courts and the law, to the detriment of society.

To the extent that the threat of having to pay damages incentivizes entities to act lawfully—by not committing torts, not breaching contracts, etc.—the ability to escape the force of judgments greatly reduces such incentives. The ability to evade a money judgment becomes the ability to evade the law. For these and other reasons, the "United States has a strong interest in enforcing its judgments . . . ." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1478 (9th Cir. 1992).

Consistent with this strong interest, Rule 69(a)(2) is designed to assist judgment creditors in obtaining satisfaction of judgments and ensuring that judgments are not empty vessels. The Rule states: "In aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." This provision is "intended to establish an effective and efficient means of securing the execution of judgments. As part of that process it provides

for the securing of information relating to the assets of the judgment debtor." *United States v. McWhirter*, 376 F.2d 102, 106 (5th Cir. 1967).

Rule 69(a)(2) "allows judgment creditors to conduct full post-judgment discovery to aid in executing judgment." *Credit Lyonnais, S.A. v. SGC Int'l, Inc.*, 160 F.3d 428, 430 (8th Cir. 1998). Rule 69(a)(2) permits the judgment creditor "to find out about assets on which execution can issue or about assets that have been fraudulently transferred or are otherwise beyond the reach of execution." 12 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 3014 at 189 (2014). To locate a judgment debtor's assets, a judgment creditor may use any method of discovery authorized by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 69 (advisory committee's note to 1970 amendment).

**B. Limitations on the Breadth of Rule 69(a)(2)**

Although Rule 69(a)(2) affords a judgment creditor broad discovery, there are limits. *Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41 (1st Cir. 2003). As Judge Learned Hand noted, it would be "oppressive" to allow a judgment creditor to seek information from anyone he desired. *Capital Co. v. Fox*, 85 F.2d 97, 100 (2d Cir. 1936). District courts, therefore, must occasionally supervise post-judgment

discovery "to minimize its costs and inconvenience and to prevent improper uses of discovery requests." *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for the Southern Dist. of Iowa*, 482 U.S. 522, 546 (1987).

**1. *A Court Must Have Entered a Money Judgment***

Rule 69(a)(2) initially limits the scope of discovery by requiring a federal money judgment. Entry of a money judgment is the key that unlocks the discovery process authorized by Rule 69(a)(2). *United States v. Varnado*, 447 F. App'x 48, 50 (11th Cir. 2011); *Sanderson v. Winner*, 507 F.2d 477, 480 (10th Cir. 1974); *N.L.R.B. v. Trans Ocean Export Packing, Inc.*, 473 F.2d 612, 615 (9th Cir. 1973). Furthermore, "Rule 69 applies only to money judgments of the federal court." 12 WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 3011 at 167. Absent a federal money judgment, a litigant may not avail himself of discovery under Rule 69(a)(2).

Here, there is no dispute that the United States District Court for the Eastern District of Virginia entered a judgment for Talentscale and against Aery Aviation in the amount of $1,142,467.20. Talentscale subsequently filed that judgment in the Northern District of Florida.

Rule 69(a)(2), therefore, authorizes Talentscale to utilize the post-judgment discovery process.

### 2. *The Judgment Creditor's Purpose for Seeking Discovery Must be Satisfaction of the Judgment*

Rule 69(a)(2) also limits the scope of permissible discovery by imposing a purpose requirement. A judgment creditor may not make a discovery request pursuant to Rule 69(a)(2) unless it is for the purpose of identifying or obtaining assets of the judgment debtor. *JP Morgan Chase Bank, N.A. v. DataTreasury Corp.*, 936 F.3d 251, 259 (5th Cir. 2019); *McWhirter*, 376 F.2d at 106. Put another way, any discovery request made pursuant to Rule 69(a)(2) "must be calculated to assist in collecting on a judgment." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012), *aff'd sub nom. Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134 (2014); *see DataTreasury Corp.*, 936 F.3d at 256.

Propounding discovery requests to harass a judgment debtor or those associated with the debtor obviously would be inappropriate, would not be for the purpose of identifying the judgment debtor's assets, and would violate Rule 69(a)(2). *EM Ltd.*, 695 F.3d at 208; *Silicon Knights, Inc. v. Epic Games, Inc.*, 917 F. Supp. 2d 503, 533 (E.D.N.C. 2012). An entity seeking a protective order on this ground bears the burden of

demonstrating that the propounding party is acting with an improper purpose. *Chi. Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001); *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 435 (5th Cir. 1990).

Unfortunately, courts have yet to devise an instrument for reading minds and determining the purposes for which people act. Courts instead rely on common sense and circumstantial evidence to divine purpose and intent. *Cuellar v. United States*, 553 U.S. 550, 567 n.8 (2008); *Am. Comm'cns Ass'n, CIO v. Douds*, 339 U.S. 382, 411 (1940). In the context of Rule 69(a)(2), this includes examining the nature and extent of the information a judgment creditor seeks. If the discovery method employed by the judgment creditor—including the information requested—likely would yield information that readily would assist the judgment creditor in discovering or obtaining a judgment debtor's assets, a court may conclude that the judgment creditor has a permissible purpose for requesting the information. Such a request is not objectionable simply because it requires the judgment debtor to expend effort or might reveal information the debtor would prefer remained hidden.

Here, Talentscale's subpoena duces tecum seeks information about substantial sums transferred by Aery's "majority interest holder" during a period when Aery claimed it was too impoverished to pay Talentscale according to the terms of the contract. Specifically, Talentscale contends that it is seeking this information to determine whether Aery contributed any funds to the purchases or renovations of Beale's Florida properties, and to ascertain whether any fraudulent transfers occurred in relation to Beale's properties.

Rule 69(a)(2) provides litigants with flexibility that depends upon the context. When a judgement debtor appears to have expended substantial capital while failing to satisfy a judgment after a reasonable time, a court may perceive a need for broader discovery than otherwise would be reasonable. *Credit Lyonnais, S.A.*, 160 F.3d at 431. In such instances, a "judgment creditor must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor." *Caisson Corp. v. Cnty. W. Bldg. Corp.*, 62 F.R.D. 331, 334 (E.D. Pa. 1974).

In this case, Talentscale has demonstrated a sufficient connection between its efforts to collect on its judgment and the information sought

from Nova Homes. Aery has not demonstrated that Talentscale's primary purpose is to harass Aery or its members. Rather, it appears that Talentscale seeks to ascertain whether Aery or Beale transferred asserts that could have been used to pay Talentscale. Accordingly, Aery has failed to carry its burden of demonstrating that Talentscale is acting with an improper purpose.

**3. *The Information Sought by the Judgment Creditor Must be Relevant***

Discovery under Rule 69(a)(2) is further limited by the incorporation of the relevance and proportionality limitations of Rule 26(b). *Republic of Argentina*, 573 U.S. at 139; *Rossini v. Republic of Argentina*, 453 F. App'x 22, 24 (2d Cir. 2011); *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1405 (5th Cir. 1993). Under the relevance limitation, the requested information must be relevant to satisfaction of the judgment, including "obtaining information on hidden or concealed assets, including assets that may have been fraudulently transferred." *DataTreasury Corp.*, 936 F.3d at 256; *E.I. DuPont de Nemours and Co. v. Kolon Industries, Inc.*, 286 F.R.D. 288, 292 (E.D. Va. 2012).

For purposes of the discovery process, including post-judgment discovery, relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Akridge v. Alfa Mut. Ins. Co.*, 1 F.4th 1271, 1276 (11th Cir. 2021) (quotation marks omitted). A litigant who seeks "much broader discovery" than the "natural focus of the inquiry" generally must show "particularized need and likely relevance." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1085 (11th Cir. 1990). A demonstration of relevance is particularly important when the judgment creditor seeks information from a non-party. *Rossini*, 453 F. App'x at 24.

Here, Talentscale's request for information from Nova Homes is quite broad. As noted above, Talentscale seeks—among other things—contracts, proposals, estimates, work orders, invoices, records of payments regarding Nova Homes's dealings with Beale, and any communications with Scott Beale. Without knowing the contents of these documents, this court cannot say that the request seeks information that is irrelevant to Talentscale's efforts to find Aery's assets and collect on the judgment. Nova Homes is not seeking a protective order—more on

that below—so this court will not burden Nova Homes with producing the materials for *in camera* inspection.

"Discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought has no possible bearing on the subject matter of the action." *Companhia Engergetic Potigua v. Caterpilla Inc.*, 307 F.R.D. 620, 627 (S.D. Fla. 2015). The party resisting a discovery request has the burden to demonstrate with specificity that the request is objectionable. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990); *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); *Adelman v. Boy Scouts of Am.*, 276 F.R.D. 681, 689 (S.D. Fla. 2011).

Beyond arguing that Beale and Aeru are distinct entities, Aery does not specifically explain how each of the various items Talentscale seeks are irrelevant. Aery also has not shown that the materials Talentscale seeks have no possible value in Talentscale's quest to find and recover assets to satisfy the judgment. Accordingly, Aery has failed to demonstrate that Talentscale is seeking only irrelevant information such that a protective order would be appropriate.

### 3. *Rule 69(a)(2) Authorizes Judgment Creditors to Obtain Information from Non-Parties*

In contrast to the limitations discussed above, Rule 69(a)(2) places almost no limitation on persons from whom post-judgment discovery can be obtained. The Rule authorizes judgment creditors to obtain relevant information "from any person—including the judgment debtor." The Rule's use of the word "any" indicates an expansive scope. *Patel v. Garland*, 596 U.S. 328, 338 (2022); *Babb* v. *Wilkie*, 589 U.S. 399, 405 n.2 (2020). The term "any person," therefore, includes both parties and non-parties. Furthermore, by including an explicit mention of "the judgment debtor," the Rule makes clear that the term "any person" extends beyond merely "the judgment debtor." In the context of judgment collection, this breadth can be important.

Rule 69(a)(2) also explicitly states that the judgment debtor can obtain discovery "as provided in these rules." Accordingly, Rule 69(a)(2) authorizes judgment creditors to depose witnesses pursuant to Rule 30 and Rule 31, propound interrogatories pursuant to Rule 33, request

production of documents and electronically stored information pursuant to Rule 34, and request admissions pursuant to Rule 36.[1]

Rule 69(a)(2) also authorizes judgment creditors, pursuant to Rule 34(c) and Rule 45, to serve subpoenas on, and obtain discovery from, non-parties. *See G–Fours, Inc. v. Miele*, 496 F.2d 809, 810 (2d Cir. 1974); *British Int'l Ins. Co. Ltd. v. Seguros la Republica, S.A.*, 200 F.R.D. 586, 589 (W.D. Tex. 2000). "A Rule 45 subpoena may require a nonparty to produce 'designated documents, electronically stored information, or tangible things in that person's possession, custody, or control.'" *Leonard v. Martin*, 38 F.4th 481, 490 (5th Cir. 2022) (quoting Fed. R. Civ. P. 45(a)(1)(A)(iii)). Of course, under the Federal Rules of Civil Procedure, "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Cusamano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998). "Bystanders should not be drawn into the parties' dispute without some

---

[1] A request for admission under Rule 36 may have limited value in the post-judgment context because the parties are not preparing for a trial on the merits. "Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove." *Pickens v. Equitable Life Assurance Soc'y*, 413 F.2d 1390, 1393 (5th Cir. 1969)

good reason, even if they have information that falls within the scope of party discovery." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019).

Nevertheless, obtaining information from non-parties can be vital to learning of fraudulent transactions. Judgment creditors, therefore, routinely seek asset discovery from non-parties who "possess information pertaining to the judgment debtor's assets." *EM Ltd.*, 695 F.3d at 207, *aff'd sub nom. Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134 (2014). Aery has not demonstrated that Nova Homes should be immunized from answering discovery requests merely because it is not a party.

**4. *Rule 69(a)(2) Authorizes Judgment Creditors to Obtain Information About Certain Non-Parties Who Are Related to the Judgment Debtor***

Rule 69(a)(2) limits a judgment creditor's ability to obtain information *about* non-parties. 12 WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 3014 at 191. One district court has stated that discovery concerning the assets of a non-party "is generally not contemplated by Rule 69(a)." *Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559, 562 (S.D.N.Y. 1977). But Rule 69(a)(2) does not preclude obtaining

information about the assets of non-parties, and sometimes discovery about non-parties can be appropriate under the Rule. For example, when a non-party is closely associated with a judgment debtor—or when a non-party may have received assets from a judgment debtor that otherwise could have been used to satisfy the judgment, or may know where such assets are located—Rule 69(a)(2) authorizes the judgment creditor to obtain relevant information possessed by non-parties. *G–Fours, Inc.*, 496 F.2d at 810; *Magnaleasing, Inc.*, 76 F.R.D. at 562; *Caisson Corp.*, 62 F.R.D. at 335.

A non-party "can be examined in relation to the financial affairs of the judgment debtor," especially when there is a close relationship between the judgment debtor and the relevant non-party. *Caisson Corp.*, 62 F.R.D. at 335. "Discovery has been permitted against a non-party where the relationship between the judgment debtor and the non-party is sufficient to raise a reasonable doubt about the bona fides of the transfer of assets between them." *Magnaleasing, Inc.*, 76 F.R.D. at 562.

When the judgment debtor is a partnership, corporation, or limited liability company, to ascertain whether the judgment debtor transferred assets to evade satisfaction of the judgment—and to assist in clawing

back such assets in the event of an evasive transfer—a judgment creditor sometimes may obtain information regarding the finances of those closely related to the debtor entity. *Credit Lyonnais*, 160 F.3d at 430.

In appropriate circumstances, a judgment creditor can obtain information regarding the financial dealings of key shareholders, partners, members, directors, managers, alter egos, paramours, ex-spouses, close relatives, and others with a close relationship to the judgment debtor. *Credit Lyonnais, S.A.*, 160 F.3d at 430; *G–Fours, Inc.*, 496 F.2d at 810; *Trustees of North Fla. Operating Engineers Health and Welfare Fund v. Lane Crane Serv., Inc.*, 148 F.R.D. 662, 664 (M.D. Fla. 1993). After all, inanimate entities—such as limited liability companies and corporations—can act only through their agents. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985). It is sensible, therefore, to afford judgment creditors access to relevant and unprivileged information entrusted to these agents.

Individuals who conceal assets sometimes divulge critical facts to close associates and family members, and they may even use these associates and family members as conduits for fraudulent transfers of

assets. It therefore can be reasonable to seek information from individuals closely connected to judgment debtors.

Here, Talentscale has demonstrated that Scott Beale is a key member of Aery, and that Nova Homes may have information relevant to Aery and Beale's finances. Accordingly, Aery has not demonstrated that this court should curtail the discovery process simply because Talentscale seeks information regarding a non-party—Scott Beale—who is closely related to Aery.

**C. <u>Aery Lacks Standing to Challenge a Subpoena that Seeks Unprivileged Information from a Non-Party</u>**

"Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought." 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2459 at 435 (3d ed. 2008) (footnote omitted). Put another way, in "the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness." *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975); *see United States v. Viltrakis*, 108 F.3d 1159, 1160 (9th Cir. 1997); *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979).

Aery does not contend—much less demonstrate—that the information Talentscale currently seeks is protected from disclosure by any privilege that belongs to Aery or anyone else. Aery also has not demonstrated that the subpoena infringes any legitimate interest of Aery. Accordingly, even if Talentscale's subpoena were defective in some respect or seeks irrelevant information, Aery lacks standing to move for protection.

## CONCLUSION

Because Aery Aviation, LLC does not have standing to obtain a protective order to preclude its judgment creditor from obtaining non-privileged financial information regarding one of Aery's members, and because Rule 69(a)(2) authorizes Talentscale to obtain relevant information from non-parties that could assist Talentscale in obtaining satisfaction of the judgment, Aery's motion for a protective order is **DENIED**.

**SO ORDERED** this 6th day of October 2025.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**