**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | | |
|---|---|---|
| TALENTSCALE, INC., | ) | |
| | ) | Case No. 6:25-mc-00003-CEM-RMN |
| Judgment Creditor, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AERY AVIATION, LLC, | ) | |
| | ) | |
| Judgment Debtor. | ) | |
| | ) | |

# NONPARTY MOVANTS' MOTION FOR PROTECTIVE ORDER REGARDING THE ADP, MESHPAY, AND BILL.COM SUBPOENAS AND INCORPORATED MEMORANDUM

Nonparties Aviation Capital Partners, LLC ("ACP"), Aviation Capital Partners II, LLC ("ACP II"), Fast Bird, LLC, GH Equipment, LLC, and Aerodrome Properties, LLC (collectively, the "Nonparty Movants") move under Rule 26(c) for a protective order or, alternatively, relief under Rule 26(b)(2)(C) prohibiting Talentscale, Inc. ("Talentscale") from obtaining records or information concerning them under its September 25, 2026, subpoenas issued in this collection proceeding to Automatic Data Processing, Inc. ("ADP"), Meshpay US, Inc. ("Meshpay"), and Bill.com, LLC ("Bill.com"), attached as Exhibit 1. The Nonparty Movants request that the Court decline to enforce any

of the three subpoenas because the pervasive overbreadth cannot be cured through discrete limitations.

The Nonparty Movants are defendants in *Talentscale, Inc. v. Beale et al.*, No. 2:26-cv-01973-SPC-NPM (M.D. Fla.) (the "Beale Action"), in which Talentscale alleges fraudulent transfers from Aery Aviation, LLC ("Aery") to Beale and the Nonparty Movants. Beale Action, ECF No. 1 (the "Complaint"), ¶¶ 1–6, 19. They are nonparties in this collection proceeding, and the judgment being enforced is against Aery, not them.

Talentscale has issued identical document demands to ADP, Meshpay, and Bill.com in both proceedings. The Nonparty Movants are filing a substantially similar motion for protective order in the Beale Action to prevent disclosure under the subpoenas issued there. They seek corresponding protection here because relief limited to the subpoenas in one proceeding would leave the demands issued in the other unaddressed.

The Nonparty Movants maintain the personal-jurisdiction objection asserted in ECF No. 17 and addressed in ECF No. 35 in the Beale Action. They seek only discovery protection, not a decision on liability, and do not consent to personal jurisdiction over the claims in the Beale Action.[1]

---

[1] The Nonparty Movants intend to file a separate motion for protective order in the Beale Action addressing discovery as a whole pending resolution of their jurisdictional motion in that action.

## MEMORANDUM IN SUPPORT

Talentscale's fraudulent-transfer allegations do not justify unrestricted access to years of financial, personnel, and account records. The Beale Action concerns allegedly improper transfers from Aery to Beale and the Nonparty Movants. This proceeding concerns collection of the judgment against Aery; the Nonparty Movants are not judgment debtors or parties here. Yet the ADP, Meshpay, and Bill.com subpoenas demand sweeping records of payroll, banking, spending, financing, and account administration, and extend those demands to additional accounts based on shared users or funding sources. Ex. 1, ADP, Meshpay, and Bill.com Subpoenas, Ex. A ¶¶ 1–7. Their overbreadth permeates the demands and would require wholesale redrafting, rather than discrete limitations, to connect the requested production to collection of the judgment against Aery.

The Nonparty Movants seek protection against that overreach. The Court should prohibit Talentscale from obtaining records or information concerning the Nonparty Movants under the subpoenas as drafted, leaving Talentscale to formulate properly tailored requests. The possibility that some responsive records may be relevant does not supply workable limits for the demands as written.

## BACKGROUND RELEVANT TO THE SUBPOENAS

Talentscale obtained a $1,142,467 judgment against Aery on October 9, 2024, arising from unpaid staffing invoices. Beale Action, ECF No. 1, ¶¶ 1, 21. Aery is not a party to the Beale Action, in which Talentscale seeks relief against Beale and the Nonparty Movants as alleged recipients or beneficiaries of fraudulent transfers. *Id.* ¶¶ 2–6, 19. The Complaint identifies 51 alleged transfers totaling $9,867,423 between January 2021 and June 2025, organized by date, amount, source, recipient, and description. *Id.* ¶ 86 & Charts 1–2.

The allegations against ACP and ACP II concern aircraft-lease payments that allegedly preceded ownership or accrued rent, exceeded stated rent, or continued after disposition of an aircraft. *Id.* ¶¶ 39–52. The allegations against Fast Bird concern an aircraft sale-leaseback, Aery's funding of a related deposit, and subsequent payments. Id. ¶¶ 53–59. As to GH Equipment, Talentscale challenges Aery's funding of aircraft purchases in which title was placed in GH Equipment. *Id.* ¶¶ 60–61. As to Aerodrome, it challenges construction expenditures, a loan commitment fee, and rent and related payments concerning the hangar Aery occupies. *Id.* ¶¶ 62–69. The claims against Beale concern distributions and personal-benefit payments, including funds allegedly used to acquire or improve Florida residences. *Id.* ¶¶ 30–37, 258–264.

On September 25, 2026, Talentscale issued subpoenas in this collection proceeding to ADP, Meshpay, and Bill.com requiring production on October 9, 2026. Copies are attached as Exhibit 1.

All three seek records from January 1, 2021, to the present for accounts in the names of the five Nonparty Movants and Aery. The ADP subpoena requests payroll registers and journals; employee earnings, direct-deposit, and pay-card records; employee master files; timecards and punch-edit histories; tax returns and filings; garnishment records; payroll funding and bank-account information; user and administrator access histories; and related agreements, invoices, and correspondence. Ex. 1, ADP Subpoena, Ex. A ¶¶ 1–6.

The Meshpay subpoena requests account-opening and ownership records; linked bank accounts and funding histories; credit applications, financing agreements, and repayment records; all card, vendor, subscription, and bill-payment transactions and supporting documents; spending policies and approval histories; audit logs and accounting-system connections; and company correspondence and Meshpay's internal communications. Ex. 1, Meshpay Subpoena, Ex. A ¶¶ 1–6.

The Bill.com subpoena requests account-opening and ownership records; user and administrator access histories; linked bank accounts and funding records; complete transaction, payment, vendor, receivables, and card records;

uploaded bills, invoices, and approval histories; financing records; audit logs and connected-system information; agreements, correspondence, and internal communications; credits and refunds; and tax and payroll records. Ex. 1, Bill.com Subpoena, Ex. A ¶¶ 1–6.

Each subpoena further extends its demands to additional accounts identified through shared authorized users, administrators, or specified funding sources, and requires responsive documents in both native format and Bates-numbered PDFs. Ex. 1, ADP, Meshpay, and Bill.com Subpoenas, Ex. A, introductory directive & ¶ 7.

**STANDARD**

The Nonparty Movants seek protection of their own records and information under Rule 26(c)(1), not relief based on ADP's, Meshpay's, or Bill.com's production burden. *Auto-Owners Insurance Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005), confirms that parties may seek protection from irrelevant discovery directed to a nonparty: "[a]s parties, Defendants clearly have standing to move for a protective order if the subpoenas seek irrelevant information." *Id.* at 429. A party may seek that protection as to its own interests, but cannot invoke oppression or undue-burden objections belonging to a nonparty that has not raised them. *Davis v. State Farm Mut. Auto. Ins. Co.*, 347 F.R.D. 370, 373 (M.D. Fla. 2024); *Auto-Owners*, 231 F.R.D. at 429. The Nonparty Movants rely on their interests in

the records sought, not their status as defendants in the Beale Action. If the Court concludes that they may not seek relief under Rule 26(c)(1), they alternatively request that the Court exercise its independent authority under Rule 26(b)(2)(C)(iii) to limit discovery exceeding the scope permitted by Rule 26(b)(1).

The movant seeking a protective order bears the burden of demonstrating good cause, which requires "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements"; blanket or unsubstantiated assertions of overbreadth or undue burden do not suffice. *Auto-Owners*, 231 F.R.D. at 430. The court must also be satisfied that, on balance, the interests of the party seeking protection outweigh those of the opposing party. *McCarthy v. Barnett Bank of Polk Cnty.*, 876 F.2d 89, 91 (11th Cir. 1989).

Rule 69(a)(2) permits discovery from any person in aid of judgment or execution; discovery here is therefore not limited to the transfers pleaded in the Beale Action. Collection discovery nevertheless remains subject to Rule 26's relevance and proportionality limitations. Fed. R. Civ. P. 26(b)(1), (b)(2)(C), 69(a)(2); *Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322, 1329 (11th Cir. 2020). On a showing of good cause, the Court may enter a protective order against overbroad, irrelevant third-party discovery while

permitting a more narrowly tailored subpoena focused on relevant issues. *Auto-Owners*, 231 F.R.D. at 430.

## ARGUMENT

## I. THE SUBPOENAS ARE OVERBROAD AND SHOULD NOT BE ENFORCED

### A. The ADP Subpoena

The alleged transfers do not justify the ADP subpoena's demand for every employee's deposit instructions, pay-card enrollment, timecards, punch-edit history, and garnishment records. Ex. 1, ADP Subpoena, Ex. A ¶¶ 1–5(H)–(M), (P). The Complaint identifies the transfers Talentscale contends were fraudulent and the alleged recipients. Yet the subpoena does not limit itself to those transactions or recipients, or other matters bearing on collection of the judgment against Aery. Instead, it reaches the Nonparty Movants' payroll, funding, and personnel records, including employee banking instructions and timekeeping information unrelated to the challenged transactions.

The Complaint does not identify ADP as the means by which any transfer in Chart 1 occurred. Nor does the subpoena connect payroll administration or funding to those transfers. For each Nonparty Movant, ADP must produce direct-deposit registers identifying the routing and account number receiving each deposit; pay-card enrollment, cardholder identities, and load histories; employee master files containing addresses, employment dates,

and pay-rate histories; timecards and punch-edit histories; and garnishment and lien payment records. Ex. 1, ADP Subpoena, Ex. A ¶¶ 1–5(I), (K)–(M), (P). These demands concern the workforce generally, without identifying an employee, payroll payment, or withholding obligation connected to the challenged transfers or otherwise bearing on collection of the judgment.

Whatever discovery may properly bear on Aery's assets or transfers, Rule 26 does not permit Talentscale to use the alleged transfers as a gateway to wholesale discovery of unrelated employees' private financial and personnel records without a demonstrated connection to collection of the judgment. Protecting the unrelated records while leaving Talentscale free to serve a properly tailored subpoena preserves its legitimate discovery interests without authorizing the indiscriminate disclosure demanded here.

**B. The Meshpay Subpoena**

Meshpay presents a different overbreadth problem. Subparagraphs (K), (L), and (N) request complete card-transaction histories, vendor, subscription, and bill-payment records, and supporting documents for each transaction. Subparagraphs (T) and (U) demand correspondence with the companies or their users and Meshpay's internal communications concerning the companies. Ex. 1, Meshpay Subpoena, Ex. A ¶¶ 1–5(K)–(L), (N), (T)–(U). These requests encompass ordinary expenditures and communications without limiting the production to transfers from Aery, disposition of their proceeds, consideration

received, or another legitimate collection purpose. The financing request likewise seeks applications, credit decisions, guarantees, security agreements, and repayment histories for every covered account without distinguishing financing connected to Aery's assets or transfers from unrelated financing. *Id.* ¶¶ 1–5(H).

Notwithstanding the overbreadth described above, the demands extend even further. Meshpay must disclose every issued card, vendor bank-routing and account numbers, credit applications and credit decisions, account-change audit logs, connected accounting and personnel systems, and internal communications among customer-success, compliance, finance, and credit-risk personnel. Ex. 1, Meshpay Subpoena, Ex. A ¶¶ 1–5(H), (J), (L), (P)–(Q), (U). These requests reconstruct the Nonparty Movants' spending, credit, and administrative relationships without identifying how those records explain the aircraft, hangar, or other transfers alleged in the Complaint or otherwise aid collection of the judgment against Aery.

Subparagraph (M) does not cure that disconnect. It requests every payment to Beale, any member of his family, and affiliated entities without connecting those payments to a challenged transfer or another legitimate collection purpose. Ex. 1, Meshpay Subpoena, Ex. A ¶¶ 1–5(M). The Complaint does not identify Meshpay as the platform through which any transfer in Chart 1 occurred. Beale Action, ECF No. 1, Chart 1. Naming potential recipients does

not establish the relevance of every payment involving them, much less justify complete spending and financing histories and unrestricted communications concerning the companies.

The Nonparty Movants' interest is in preventing disclosure of their unrelated financial and business records, not in asserting Meshpay's production burden. That interest outweighs the unsupported request for their complete account histories, while a properly tailored new subpoena would preserve Talentscale's ability to obtain relevant transaction and tracing evidence.

**C. The Bill.com Subpoena**

The Bill.com subpoena demands complete transaction and payment histories; vendor and payee records, including tax-identification and bank-account information; uploaded bills, invoices, and approval histories; receivables records; and complete card-transaction histories for every covered account. Ex. 1, Bill.com Subpoena, Ex. A ¶¶ 1–5, subparts (E)–(F), (H)–(J). It also seeks financing records, company and user correspondence, Bill.com's internal communications concerning each company, and any tax and payroll records it maintains. *Id.* ¶¶ 1–5, subparts (K), (O)–(P), (R)–(S). These demands reach ordinary business receipts, expenses, and communications without distinguishing records bearing on Aery's assets, transfers, or another

legitimate collection purpose from unrelated transactions and communications.

Chart 1 specifically identifies Bill.com payments to W.M. Jordan for Aerodrome and distributions to Beale. Beale Action, ECF No. 1, Chart 1, transfers 8, 11, 17–19, 23. Although discovery here is not confined to those payments, their identification does not justify disclosure of the Nonparty Movants' complete vendor, receivables, financing, payroll, and account-administration histories.

For example, the subpoena demands every vendor's and payee's tax-identification number, W-9, and banking information; all invoices issued and payments received through the account; every card's complete transaction history; and any payroll registers, earnings statements, and employment-tax forms maintained by Bill.com. Ex. 1, Bill.com Subpoena, Ex. A ¶¶ 1–5(F), (I)–(J), (S). Those demands encompass unrelated suppliers, customers, employees, and operating activity. They are not limited to the identified payments to W.M. Jordan or Beale, their supporting documents, the source or disposition of those funds, or other matters bearing on collection of the judgment against Aery. Subparagraph (G)'s separate demand for every payment to Beale, any family member, or an affiliated entity also supplies no limit connecting those payments to Aery's assets, transfers, or another legitimate collection purpose. Ex. 1, Bill.com Subpoena, Ex. A ¶¶ 1–5(G).

The Nonparty Movants seek protection for their unrelated financial and business records, not relief based on Bill.com's production burden. The Court should prohibit enforcement of the Bill.com subpoena as to records or information concerning the Nonparty Movants, without prejudice to a properly tailored new subpoena that preserves Talentscale's ability to obtain relevant transaction and tracing evidence.

**D. Defects Common to All Three Subpoenas**

Paragraph 7 of each subpoena extends the full demands to every account on which Sean Boyd, Scott Beale, Patty Nelson, or any other officer, member, manager, or employee of the six companies is or was an authorized user or administrator. It also reaches every account funded from any bank account that also funded an account of Aery or Aerodrome. Ex. 1, ADP, Meshpay, and Bill.com Subpoenas, Ex. A ¶ 7. Those connections do not, without more, make an account's entire payroll, transaction, financing, or administrative history relevant. Yet each subpoena uses the connection alone to demand the same broad categories of underlying records for every additional account, without requiring any link to Aery's assets or transfers or another legitimate collection purpose. This expansion compounds the overbreadth and supplies no workable stopping point for the production.

In *Prime Insurance*, certain discovery requests concerned an allegedly fraudulent policy amendment, but the subpoenas demanded every document

concerning the policy from its inception, regardless of relevance. The court held that the presence of relevant materials did not justify blanket demands and entered a Rule 26(c) protective order prohibiting enforcement of the subpoenas as they were overbroad, unduly burdensome, and disproportionate. *Prime Insurance Co. v. Medicab Transportation, LLC,* No. 2:24-cv-421-SPC-KCD, 2024 WL 4695876, at *2–3 (M.D. Fla. Nov. 6, 2024).

The ADP, Meshpay, and Bill.com subpoenas suffer from the same defect. ADP is asked to produce years of employee banking, payroll, timekeeping, and account-administration records, while Meshpay is asked to produce complete spending and financing histories, supporting documents, and broad categories of external and internal communications. Bill.com is asked to produce complete payment, vendor, receivables, financing, tax, and payroll records, together with broad correspondence and internal communications. Ex. 1, ADP, Meshpay, and Bill.com Subpoenas, Ex. A ¶¶ 1–7.

The overbreadth is not confined to an isolated category or an excessive date range that the Court could readily sever. It extends across the subjects, persons, accounts, transactions, and time periods covered by the demands. Each applies the same January 1, 2021, starting date to every category of requested information, including employee timekeeping, direct-deposit, garnishment, and account-access records under ADP, and transaction, financing, and correspondence records under Meshpay and Bill.com. Ex. 1,

ADP, Meshpay, and Bill.com Subpoenas, Ex. A ¶¶ 1–7. Although the Complaint alleges certain transfers dating back to 2021, those allegations do not justify demanding nearly six years of otherwise unrelated employee, business, and administrative records. The temporal scope of each request should be tied to the information sought and its relevance to collection of the judgment, rather than a blanket historical production merely because some challenged transfers occurred in 2021. Fed. R. Civ. P. 26(b)(1), (c)(1)(D).

However, shortening the period would leave the same unrestricted categories in place, and deleting a category would not resolve the demands for every additional account under paragraph 7. Curing these defects would require Talentscale to reformulate the requests around Aery's assets, transfers, and other identified matters bearing on collection of the judgment, rather than merely shorten a date range or delete an isolated category. The Nonparty Movants therefore request protection against obtaining records or information concerning them under the subpoenas as drafted, without prejudice to properly tailored new requests.

WHEREFORE, the Nonparty Movants respectfully request that the Court enter a protective order under Rule 26(c) or, alternatively, limit discovery under Rule 26(b)(2)(C), prohibiting Talentscale from enforcing the ADP, Meshpay, and Bill.com subpoenas in their entirety as to records or information concerning the Nonparty Movants, without prejudice to properly

tailored new requests. The pervasive overbreadth cannot be cured by discrete subject-matter or temporal limitations. They seek the relief requested here without waiving their personal-jurisdiction objection in the Beale Action or requesting any adjudication of liability.

**LOCAL RULE 3.01(g) CERTIFICATE**

Counsel for the Nonparty Movants attempted to resolve this dispute by email with Kenneth E. Chase on October 7 and 8, 2026. Mr. Chase declined to withdraw the ADP and Meshpay subpoenas but offered to discuss limitations. Counsel provided further objections and requested a production hold. As of filing, no response to that follow-up or agreement has been received. Counsel also attempted to reach Mr. Chase by telephone but has not been able to complete a conference. Because production is scheduled for October 9, 2026, the Nonparty Movants are filing this motion before disclosure occurs. Counsel will continue diligently attempting to confer for three days after filing and will promptly supplement this certificate following contact or expiration of that period, as required by Local Rule 3.01(g)(3).

Respectfully submitted,

AVIATION CAPITAL PARTNERS, LLC
AVIATION CAPITAL PARTNERS II, LLC
FAST BIRD, LLC
GH EQUIPMENT, LLC
AERODROME PROPERTIES, LLC

By: /s/ Rachel L.T. Rodriguez
Of Counsel

Rachel L.T. Rodriguez
FL Bar No. 110425
Vires Law Group, PLLC
515 N. Flagler Dr., Suite 350
West Palm Beach, FL 33401
Tel: (561) 370-7383
rrodriguez@vireslaw.group
*Counsel for Nonparty Movants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of October 2026, a true and accurate copy of the foregoing was electronically filed via the Court's CM/ECF system, which will send notification of such filing to the following:

Kenneth E. Chase
CHASE LAW & ASSOCIATES, PA
951 Yamato Road, Suite 280
Boca Raton, FL 33431
Tel: 305-402-9800
kchase@chaselaw.com
*Counsel for Judgment Creditor*

By: /s/ Rachel L.T. Rodriguez